UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STONE BASKET INNOVATIONS, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:16-cv-00858-LJM-TAB |
| COOK MEDICAL LLC, | ) |
| Defendant. | ) |

**<u>ORDER ON DEFENDANT'S MOTIONS FOR EXCEPTIONALITY AND JOINDER</u>**

This matter is before the Court on Defendant Cook Medical LLC's ("Cook's") Motion to Find the Case Exceptional and Award Fees against Plaintiff Stone Basket Innovations, LLC ("SBI"). Dkt. 99. Cook has also filed, pursuant to Federal Rule of Civil Procedure 19 ("Rule 19"), a Motion to Join Daniel Mitry and Timothy Salmon. Dkt. 91. Cook seeks the recovery of its attorneys' fees and costs against SBI, SBI's counsel Sutton McAughan Deaver PLLC ("SMD"), Mitry, and Salmon, following its defense of a patent infringement claim asserted by SBI against Cook. Dkt. 1. Cook alleges that it is entitled to its fees under 35 U.S.C. § 285, which allows for a prevailing party in patent litigation to recover attorney fees "in exceptional cases;" and/or under 28 U.S.C. § 1927 for vexatious litigation. Cook further requests, pursuant to Rule 19, that the Court personally join Mitry and Salmon to this action in order to provide Cook adequate relief. For the reasons set forth below, Cook's motions are **DENIED**.

# I. BACKGROUND

## A. DR. DHINDSA'S PATENT

Avtar Dhindsa, M.D., obtained U.S. Patent No. 6,551,327 (the "'327 Patent") for his stone extraction device used to remove kidney stones. Dkt. 1. During the prosecution of the '327 Patent, the Examiner twice rejected the application finding that the prior art disclosed each of the limitations of the claimed invention. Dkt. 99-4 at 15-34, 88-93. To overcome these rejections, Dr. Dhinsda added a "sheath movement element" that allowed the physician extracting the stones to close the basket by advancing a "sheath" over it and then open the basket by withdrawing the sheath. Dkt. 99-4 at 99-100.

## B. PRE-SUIT INVESTIGATION

In October 2014, Salmon contacted SMD to seek representation on the enforcement of the '327 Patent, which SBI had recently acquired from Dr. Dhindsa. Dkt. 106-2, ¶ 4. Salmon told Dr. Dhindsa that he wished to acquire the '327 Patent because he believed Cook infringed the patent. Dkt. 99-7 at 173. Salmon informed SMD that Cook had been chosen as a defendant. Dkt. 106-2, ¶ 4. On October 21, 2014, Salmon provided SMD the '327 Patent, the '327 Patent file history, and an illustrative claim chart mapping the Cook NCompass stone extraction device against claim 1 of the '327 Patent. Dkt. 106-2, ¶ 5.

SMD interviewed Dr. Dhindsa about the '327 Patent. Dkt. 106-2, ¶ 6. Dr. Dhindsa explained the purpose and use of his invention, which was to catch the small stone particles with a basket. Dkt. 106-2, ¶ 6. He also described his prior communications with Cook about his device. Dkt. 106-2, ¶ 6. Specifically, in July 2001, prior to its publication, Dr. Dhindsa discussed his stone extraction device patent application with Cook

2

representatives. Dkt. 106-4 at 147-48. On September 6, 2001, Cook informed Dr. Dhindsa that it believed his idea was "good" but stated that it did not have the capacity to work on his project at that time. Dkt. 106-5. In August 2006, Cook announced the release of its NCompass Nitinol Stone Extractor ("NCompass"), which is the device accused of infringement in the instant case. Dkt. 106-6.

### C. TEXAS LITIGATION

On March 18, 2015, Mitry and Salmon formed SBI and are its only managing members. Dkt. 99-8. SBI's sole asset is the '327 Patent. Dkts. 99-8; 99-9; 99-10; 99-11; 99-12; 99-14.

On April 8, 2015, SBI filed its Complaint against Cook in the Eastern District of Texas ("Eastern District") alleging that Cook infringed the '327 Patent. Dkt. 1. SMD claims it chose the Eastern District because: (1) Cook sold and marketed the NCompass in the district; (2) the district had well developed local patent rules; (3) the district judges there are well versed in patent cases; and (4) the time to trial in the district was found to be short compared to other districts. Dkt. 106-2, ¶ 8.

On April 30, 2015, Cook's counsel informed SMD that it would be seeking a motion to transfer, to which SBI refused to consent. Dkt. 106-2, ¶ 10. On May 15, 2015, Cook filed its Motion to Transfer Venue pursuant to 28 U.S.C. § 1404. Dkt. 10. At no point during the pendency of its motion to transfer did Cook request that SBI agree to stay the litigation proceedings until a ruling on the motion. Dkt. 106-2, ¶ 11.

SBI served its infringement contentions on July 16, 2015, to which Cook never raised any complaint or objection. Dkt. 106-2, ¶ 12. SBI also served Cook interrogatories on August 26, 2015. Cook timely answered, but SBI claimed the responses were

3

insufficient. Dkt. 106-9. Cook provided supplemental responses on December 15, 2015, which again SBI believed to be unsatisfactory. Dkt. 106-10. Cook supplemented its responses on March 8, 2016.[1]

Cook served its invalidity contentions on October 1, 2015, which SBI believed did not meet the minimum standards of the Eastern District's local patent rules. Dkt. 106-11. SBI requested that Cook amend or supplement its contentions, which it did on November 2, 2015. Dkt. 106-11. Cook never communicated to SBI a demand that the lawsuit be dismissed based on the invalidity contentions. Dkt. 106-2, ¶ 13.

On November 13, 2015, SBI indicated that no terms needed construed. Dkt. 106-13. To the contrary, Cook sought claim construction on twenty-five terms and/or phrases. Dkt. 106-15. On January 5, 2016, Cook dropped twenty-three of the twenty-five terms and added one new term for construction at the *Markman* hearing.

On December 7, 2015, Cook emailed SBI to inform it that it would be requesting oral argument on its motion to transfer venue, which SBI did not oppose. Dkt. 106-18. On December 11, 2015, Cook filed its unopposed request for oral argument on December 11, 2015. Dkt. 29.

On January 7, 2016, Cook deposed Dr. Dhindsa in Phoenix, Arizona. *See* Dkt. 106-4. During his deposition, Dr. Dhindsa was asked questions about his contact with Empire IP, LLC (a company owned by Mitry and Salmon and prior assignee of the '327 Patent), the conception of his invention, his contact with Cook, and the preparation for the '327 Patent. *See* Dkt. 106-4. When asked about the "sheath movement element" in claim

---

[1] SBI does not provide citations for some of the alleged dates that it received discovery responses from Cook. *See* dkt. 106 at 12. Nonetheless, Cook does not challenge any of these assertions and therefore the Court will presume them to be valid.

1 to overcome the rejection of his application, Dr. Dhindsa stated "that there is nothing novel about it." Dkt. 106-4 at 141-42.

On February 24, 2016, the Court issued an Order setting Cook's motion to transfer venue for an evidentiary hearing for March 16, 2016. Dkt. 35.

On March 4, 2016, prior to the *Markman* and venue hearings, Cook filed an Inter Partes Review ("IPR") petition for claims 1-8 of the asserted patent with the Patent Trial and Appeal Board ("PTAB"). Dkt. 106-21. SBI did not learn of the petition for IPR until it was filed. Dkt. 106-22. `

On March 18, 2016, the Eastern District held the *Markman* hearing on both parties' claim construction arguments. Dkt. 42. The parties disputed whether the terms "first end portion" and "second end portion" required construction. Dkt. 43 at 9. The Eastern District agreed with SBI's position that the terms did not require construction. Dkt. 43 at 12.

On March 28, 2016, the Eastern District granted Cook's motion to transfer venue to the Southern District of Indiana. Dkt. 44. On March 30, 2016, Cook filed an unopposed Motion to Stay the proceedings in Texas (Dkt. 46) pending transfer to this Court, which was granted on April 4, 2016. Dkt. 47.

### D. INDIANA LITIGATION AND PTAB

The case was transferred to this Court on April 19, 2016. Dkt. 48. On June 16, 2016, SBI filed a Joint Motion to Stay Pending Inter Partes Review (Dkt. 66), which was granted on June 20, 2016. Dkt. 67.

On June 17, 2016, in the PTAB, SBI filed its Patent Owner's Preliminary Response pursuant to 37 C.F.R. § 42.107, which states that a "patent owner may file a preliminary response to the [IPR] petition. The response is limited to setting forth the reason why no

*inter partes* review should be instituted … and can include supporting evidence." Dkt. 106-32.

On September 8, 2016, the PTAB issued its decision finding "that there is a reasonable likelihood that [Cook] would prevail in proving the unpatentability of claims 1-8 based on the challenges presented in the Petition." Dkt. 99-18 at 20-21.

On October 20, 2016, following the PTAB's grant of Cook's IPR petition, Mitry directly contacted Cook and offered to license the '327 Patent to Cook in exchange for $150,000.00. Dkt. 106-34, ¶ 7. These negotiations broke down following Cook's refusal of SBI's conditions for settlement. Dkt. 99-20.

On December 6, 2017, SBI filed a motion for adverse judgment in the IPR proceeding. Dkt. 99-21. On the same date, the PTAB entered an order cancelling all of the '327 Patent claims. Dkt. 99-22. On December 12, 2016, SBI moved to dismiss this litigation. Dkt. 75. On January 11, 2017, following a hearing on SBI's Motion to Dismiss, the Court dismissed the instant action with prejudice and allowed Cook sixty days to file its Motion for Attorney's Fees and Costs. Dkt. 90.

## II. **DISCUSSION**

Cook argues that this case is exceptional as defined under § 285 of the Patent Act, which enables a court to "award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Cook makes three arguments in support of a finding that this case is exceptional: (1) SBI's litigating position was exceptionally weak in light of the obviousness of the asserted claims and SBI's decision to file the case in Eastern District; (2) SBI was formed for the sole purpose of pursuing this litigation; and (3) Mitry and Salmon have a lengthy history of filing nuisance lawsuits like the instant case. For similar reasons, Cook

requests that Mitry and Salmon be held personally liable under 35 U.S.C. § 285.  Finally, Cook requests fees against SBI's counsel, SMD, pursuant to 28 U.S.C. § 1927.  Because this case is not exceptional, the Court need not address personal liability for Mitry and Salmon or the request for fees from SMD.

## A.  STANDARD OF REVIEW

An "exceptional" case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749, 1756 (2014). District courts determine whether a case is "exceptional" on a case-by-case basis and consider "the totality of the circumstances." *Id*.  Although Cook spends the vast majority of its brief focusing on Mitry and Salmon's other patent litigation, *see generally* dkt. 99, it is necessary to review the facts of this specific case and the manner in which it was litigated to make this determination.  Factors considered in this analysis include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id*, n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534, n. 19 (1994) (internal quotation marks omitted)).  The prevailing party must demonstrate that the case is "exceptional" by a preponderance of the evidence. *See id.* at 1758.  It is the "'substantive strength of the party's litigating position' that is relevant to an exceptional case determination, not the correctness or eventual success of that position.  A party's position on issues of law ultimately need not be correct

for them to not 'stand[] out,' or be found reasonable." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (citing *Octane Fitness*, 134 S. Ct. at 1756).

## B. WEAKNESS OF SBI'S CASE

Cook first claims that SBI's case "stands out" because of its weak litigating position. Dkt. 99 at 14-16. Cook argues that the "sheath movement element," which distinguished the '327 Patent from the prior art, was a well-known feature of the prior art. Dkt. 99 at 14. Cook claims that even a "cursory review" of SBI's own patent would reveal that the sheath movement element was not novel, rendering the '327 Patent invalid and SBI's prosecution of its claim unreasonable. Dkt. 99 at 14. Cook contends that SBI was put on notice that the '327 Patent was invalid on two separate occasions: (1) in October 2015, following service of Cook's Invalidity Contentions identifying the specific prior art invalidating the patent; and (2) in January 2016, after Dr. Dhinsda's admission that the sheath movement was not novel. Dkt. 99 at 15. Cook also contends that SBI's concession that the patent was invalid demonstrated that their position was not tenable, but that it nonetheless continued to press forward with the litigation despite SBI's weak position. Dkt. 99 at 15. Cook claims that SBI was aware of each of these deficiencies in its case and still pursued litigation, which renders this case exceptional. Dkt. 99 at 15-16.

Cook also cites SBI's decision to file in the Eastern District, where there were no parties, no witnesses, and no documents, as a strategy used by SBI to increase Cook's costs and better position the case for a nuisance settlement. Dkt. 99 at 16. Cook states that this venue choice "clearly reflected a strategy of increasing Cook's costs to better position the case for a nuisance settlement… [and] stands as yet another example of the exceptional weakness of [SBI]'s litigating positions." Dkt. 99 at 16.

In response to Cook's arguments, SBI claims that the NCompass met every limitation of the asserted claims. Dkt. 106 at 27-28, citing Dkt. 106-35. Moreover, SBI states, Dr. Dhindsa had a compelling invention story that included the possibility of misappropriation by Cook. Finally, and perhaps most telling, was the fact that following Cook's service on SBI of its invalidity contentions, it took no actions to ensure a rapid termination of the instant litigation. SBI points out that Cook did not: (1) inform SBI that it believed the lawsuit to be frivolous or unfounded; (2) demand that SBI drop the lawsuit or indicate that the asserted claims were "clearly invalid;" or (3) move for summary judgment on invalidity. Dkt. 106 at 28.

Furthermore, SBI claims that it was entitled to rely on the presumption of validity in both filing and maintaining this lawsuit. Dkt. 106 at 28, citing *Q-Pharma, Inc. Andrew Jergens Co.,* 360 F.3d 1295, 1303 (Fed. Cir. 2004) (concluding that the plaintiff's expectation of validity was reasonable "in light of the statutory presumption of validity"). Section 282 of the United States Patent Law States that "[a] patent shall be presumed valid. … The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282. Cook's argument is premised on an assumption that the Patent Office was wrong and/or incompetent, which goes against the presumption's purpose. Moreover, Cook admits that the prior art, which included the handle that Cook claims clearly invalidates the '327 Patent, was considered by the Patent Office.

In light of these circumstances, Cook has failed to establish that SBI maintained this litigation despite evidence showing a weakness in its litigation position. Dkt. 122 at 1-2. In support of its argument, Cook cites to the recent Federal Circuit decision in

*Rothschild Connected Devices Innovations, LLC v. Guardian Protection Services, Inc.*, wherein the court found that the district court clearly erred by failing to consider the plaintiff's "willful ignorance of the prior art." __ F.3d __, No. 2016-2521, 2017 WL 2407870 at *3 (Fed. Cir. June 5, 2017). Cook's reliance on *Rothschild*, however, is misplaced. In *Rothschild*, the court found affirmative evidence that the plaintiff's counsel had not conducted an analysis of the prior art asserted by the defendant and the district court clearly erred by failing to consider the plaintiff's "willful ignorance of the prior art." *Id*. In this case, Cook has failed to set forth any evidence that SBI "willfully ignored" the prior art or failed to evaluate its case in light of the evidence of record. The two pieces of evidence submitted by Cook in support of its argument for exceptionality, Dr. Dhindsa's testimony and Cook's invalidity contentions, standing alone, do not establish that SBI's case was exceptionally weak or that SBI acted unreasonably in the prosecution of the '327 Patent. *See Octane Fitness*, 134 S. Ct. at 1756. Moreover, Cook fails to provide any context whatsoever to establish that Dr. Dhindsa's testimony revealed "full notice" that the '327 Patent was invalid. Cook merely cites to two deposition excerpts and nothing more. *See* dkt. 99 at 11. Cook provides no evidence that SBI was on "full notice" of the '327 Patent's invalidity following Dr. Dhindsa's testimony nor did Cook at any time inform SBI of its own belief that Dr. Dhindsa's alleged admission established that the patent was not valid.

Cook's argument about SBI's choice of venue is similarly unavailing. Setting aside the fact that Cook has not alleged any facts to establish that SBI instituted this action solely for nuisance value, Cook admitted to selling the accused product in the Eastern

District and is registered to do business in Texas. Dkt. 13.[2] Moreover, at the *Markman* hearing, Cook stipulated that "[t]here's no question about venue." Dkt. 106-7 at 98. Finally, Cook cites to no evidence that SBI solely filed in the Eastern District to increase the "nuisance" value of the case and therefore its argument must fail. Accordingly, Cook has failed to demonstrate that SBI's choice of venue is a factor weighing in its favor.

Cook's argument that its invalidity contentions "clearly" establish invalidity is lacking any affirmative evidence that SBI willfully ignored the prior art, much less that Cook insisted that its the contentions were determinative of the issues in this case. Furthermore, even if the Court were to accept this argument as proof of notice, it contradicts Cook's own litigation strategy in this case. Cook continued to litigate this case through the PTAB, which it eventually won after a finding that Cook had "shown that there is a reasonable likelihood that it would prevail with respect to at least 1 of the challenged claims on the '327 patent." Dkt. 72-1 at 3. Shortly thereafter, settlement talks began and SBI eventually dismissed the case. Dkt. 75. Thus, when it did become clear that SBI's litigation position weakened, it attempted to settle and then dismissed the case in its entirety, but not before litigating and fully pursuing its position for nearly two years.

Cook has not shown that SBI frivolously pursued its claims here. In fact, SBI promptly took steps to stay this litigation while the IPR pended in the PTAB. Although a party must continually assess the soundness of its litigating position, *see Taurus IP LLC*

---

[2] The Court notes that this limited contact would likely not suffice under the recent Supreme Court ruling in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, which held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." 137 S. Ct. 1514, 1517 (2017). Nonetheless, the Motion to Transfer Venue was filed prior to the *TC Heartland* ruling and is not applicable to this Court's analysis.

11

*v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013), there is no evidence that SBI did not do so here. Moreover, Cook has not demonstrated that SBI actions were frivolous, unduly motivated, or objectively unreasonable in light of the circumstances in this case. *See Octane Fitness*, 134 S.Ct. at 1756, n. 6. Accordingly, Cook has failed to show by a preponderance of the evidence that SBI's litigating position was exceptionally weak such that it warrants a finding that this case is "exceptional" under 35 U.S.C. § 285.

### C. PATTERN OF LITIGATION ABUSE

Cook also alleges that this case is exceptional due to Mitry and Salmon's "pattern of litigation abuse in which they file meritless cases to extract nuisance settlements from a large number of corporate defendants." Dkt. 99 at 16-17. Cook cites a review of the many cases filed by entities owned by Mitry and Salmon to evidence that: (1) Mitry and Salmon have asserted meritless patent claims to force defendants into nuisance settlements; and (2) cases filed by Mitry and Salmon have led to needless litigation and staggering legal costs to businesses in the United States. Dkt. 99 at 16-17.

"[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional determination under § 285." *Newegg*, 793 F.3d at 1350. Cook claims that Mitry and Salmon's decisions to file numerous patent lawsuits is "inescapable" evidence that Mitry and Salmon seek to "force defendants to make nuisance settlements, with no intention of testing the merits of the patents." Dkt. 99 at 17. Cook also cites to the "staggering cost on U.S. business" as a result of Mitry and Salmon's litigation tactics. Cook's only support for these assertions is a list of over 400 cases brought by entities purportedly created by Mitry and Salmon

against companies other than Cook, which indicates that: (1) none of the cases ever went to trial; (2) in more than 130 of the cases, the asserted patent was later found to be invalid or not infringed; and (3) in more than 120 cases, the entities asserted a patent later challenged by an IPR petition. Dkt. 99 at 17. Cook, however, provides no evidence regarding whether or not the entities actually tested the merits of these cases nor any evidence that the cases were brought solely to receive nuisance value. *See* dkt. 99-2. Cook simply concludes, without more, that the number of cases and the fact that many of the asserted patents were later found to be invalid or not infringed show a pattern of abuse. But, such conclusory allegations "are not entitled to an assumption of truth at any stage in litigation." *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1312 (Fed. Cir. 2011).

In this case, there is no evidence that SBI sued Cook for the "sole purpose of forcing settlements" without any "intention of testing the merits" of its claim. *Newegg Inc.*, 793 F.3d at 1350. The evidence of record reveals that SBI participated in each stage of the litigation for nearly two years and tested the merits of its claims. Moreover, it was not until after the PTAB proceedings, which SBI also contested, that SBI sought to recover any money from Cook in this litigation. SBI fully participated in pursuing the merits of its case and no evidence has been presented that SBI solely brought this litigation in order to force a settlement.

### D. SHELL COMPANY

Cook further claims that Mitry and Salmon created SBI "for the sole purpose of insulating themselves from § 285 liability" and that this warrants a finding of exceptionality. Dkt. 99 at 18. Cook cites *Iris Connex, LLC v. Dell, Inc.*, wherein the Eastern District found a company's owner intentionally created and undercapitalized a company as an empty

13

shell solely to "game the judicial system as part of a pattern of continuing conduct." No. 2:15-cv-1915, 2017 WL 365634, at *6-8 (E.D. Tex. Jan. 25, 2017). Cook contends that *Iris Connex* illustrates that "the creation of an 'empty shell' to serve as a plaintiff in a patent case is *alone* sufficient to make the case 'stand out' as exceptional." Dkt. 118 at 10. Nothing in the *Iris Connex* decision supports such a broad interpretation and a simple reading of the case reveals that the shell corporation was only one of many factors in finding exceptionality, but was not *alone* determinative.[3] The *Iris Connex* court also found unsupportable and weak arguments, bad faith litigation, and an admitted "sloppiness in prosecuting [the] case." *Iris Connex*, 2017 365634 at *18. In the instant case, even assuming that SBI is a shell corporation, Cook has failed to set forth any evidence of the additional factors that gives rise to a finding of exceptionality; therefore, its *Iris Connex* argument must fail.

### E. PERSONAL LIABILITY

Cook argues that both Mitry and Salmon should be liable under § 285 because they were the responsible actors for this "unfounded" litigation. Dkt. 99 at 19. In support, Cook solely relies on *Iris Connex*, arguing that the "facts are an exact parallel of the facts" in the instant case. Dkt. 99 at 20. As previously discussed, the *Iris Connex* court held the lawyer-owner personally responsible for his "exceptional conduct" and stated that

---

[3] Cook's counsel's assertion that *Iris Connex* stands for the proposition that the formation of an empty shell, by itself, can form the basis of exceptionality is wholly inconsistent with the analysis in that case. The *Iris Connex* court's analysis of the empty shell used by the plaintiffs came after it had considered the weakness of the plaintiff's litigating position and its bad faith litigation. *Iris Connex*, 2017 WL 365634 at *16-18. Moreover, in the same paragraph discussing the "empty shell" the *Iris Connex* court states that such a consideration is one of "two additional reasons that resonate with the Court and support a finding of exceptionality in this case." *Id.* at *18.

14

"forthright litigants must come to court knowing they face the risk of fee shifting if their case is deemed exceptional." *Iris Connex*, 2017 WL at *20. Given the fact that Cook has failed to prove that this case is "exceptional," an analysis on personal liability is not warranted.

Cook also seeks direct liability for Mitry and Salmon because Mitry and Salmon created SBI "for the sole purpose of avoiding § 285 liability." Dkt. 99 at 21. This argument, however, was already addressed and found to be lacking any evidentiary support. *See infra, pt. D*. Cook further claims that SBI's corporate veil should be pierced because under Texas law, which is applicable because SBI is a Texas corporation, "such a unity" between SBI and Mitry and Salmon exists that the "separateness of the corporation has ceased, and holding only the corporation liable would result in an injustice." Dkt. 99 at 22 (citing *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006)). The present case, however, is not exceptional and therefore does not warrant a piercing of the corporate veil analysis to achieve an equitable result.

### F. ATTORNEYS' FEES PURSUANT TO 28 U.S.C. § 1927

Finally, Cook seeks attorney fees against Mitry, Salmon, and SMD pursuant to 28 U.S.C. § 1927. Dkt. 99 at 22-24. A district court may award attorneys' fees under § 1927 when an attorney: (1) pursues a claim that is without legal or factual basis or justification; (2) acts in an "objectively unreasonable manner" through "serious and studied disregard for the orderly process of justice;" or (3) pursues a path "that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (internal quotations and citations omitted). In support of its motion for attorneys' fees, Cook reiterates the same arguments that it

made for exceptionality, which the Court has already found to be without merit. The only new argument that Cook makes under this theory is that SBI's choice to bring suit in the Eastern District "alone supports an award of attorneys['] fees under § 1927." Dkt. 99 at 23. In support, Cook cites *Boyer v. BNSF Railway Company*, 824 F.3d 694 (7th Cir. 2016) (modified on reh'g by *Boyer v. BNSF Rlwy. Co.*, 832 F.3d 699 (7th Cir. 2016)), and claims that the *Boyer* court issued sanctions based solely on plaintiffs' counsel's choice of venue, despite also finding that the claim itself was not frivolous. The holding in *Boyer*, however, is not so broad. A close reading reveals that the choice of venue played a key role for issuing sanctions under § 1927, but only because such an act "multipl[ied] the proceedings needlessly, unreasonably, and vexatiously." *Id.* at 709. The *Boyer* court further noted that "plaintiffs' counsel could not have reasonably believed that this choice of venue would survive either a motion to dismiss the case based on forum non conveniens … or a [§] 1404(a) motion to transfer the case to the Western District of Wisconsin." *Id.* (citations omitted). It concluded that "[f]iling the case in Arkansas was, in short, an objectively unreasonable decision … the memorandum that counsel filed in opposition to BNSF's transfer motion essentially admitted the choice of forum was dictated by a desire for a different judge." *Id.* at 710.

In this case, SBI sued in the Eastern District, in part, because Cook sold and marketed the NCompass in that district. Dkt. 106-2, ¶ 8. Moreover, Cook's own counsel stated on the record that Cook sells the product in Texas and that there was "no question about venue." Dkt. 106-7 at 31. Given the fact that the product was sold in the Eastern District and Cook's own acknowledgment that venue was proper under the relevant law at the time, SBI's decision to file in the Eastern District was not "objectively unreasonable"

16

or a "serious and studied disregard for the orderly process of justice" that warrants an award of fees under § 1927. *See Jolly Group*, 435 F.3d at 720.

### III. CONCLUSION

For the foregoing reasons, Cook's motions, including its Motion to Find the Case Exceptional and Award Fees against Plaintiff Stone Basket Innovations, LLC (Dkt. 99) and its Motion to Join Daniel Mitry and Timothy Salmon (Dkt. 91), are hereby **DENIED**.

IT IS SO ORDERED this 20th day of June, 2017.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution:

William Cornelius
One American Center
909 ESE Loop 323
Suite 400
Tyler, TX 75701

Christopher D. Banys
BANYS, P.C.
CDB@banyspc.com

Michael Charles Smith
Law Office of Carl R. Roth
115 N Wellington
Suite 200
POB 876
Marshall, TX 75670

James R. Ferguson
MAYER BROWN LLP
jferguson@mayerbrown.com

Chandra Critchelow
MAYER BROWN, LLP
ccritchelow@mayerbrown.com

Melissa Anyetei
MAYER BROWN, LLP
manyetei@mayerbrown.com

Albert Berton Deaver, Jr
SUTTON MCAUGHAN DEAVER PLLC
adeaver@smd-iplaw.com

Jeffrey A Andrews
SUTTON MCAUGHAN DEAVER, PLLC
jandrews@smd-iplaw.com

Bruce James Cannon
Sutton McAughan Deaver PLLC
bcannon@smd-iplaw.com

Michael O Sutton
Sutton McAughan Deaver, PLLC
Three Riverway
Suite 900
Houston, TX 77056

William A. McKenna
WOODARD EMHARDT MORIARTY MCNETT & HENRY, LLP
wmckenna@uspatent.com