# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## NOTICE OF ENTRY OF
## JUDGMENT ACCOMPANIED BY OPINION

OPINION FILED AND JUDGMENT ENTERED: 06/11/2018

The attached opinion announcing the judgment of the court in your case was filed and judgment was entered on the date indicated above. The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc. The questions and answers are those frequently asked and answered by the Clerk's Office.

Costs are taxed against the appellant in favor of the appellee under Rule 39. The party entitled to costs is provided a bill of costs form and an instruction sheet with this notice.

The parties are encouraged to stipulate to the costs. A bill of costs will be presumed correct in the absence of a timely filed objection.

Costs are payable to the party awarded costs. If costs are awarded to the government, they should be paid to the Treasurer of the United States. Where costs are awarded against the government, payment should be made to the person(s) designated under the governing statutes, the court's orders, and the parties' written settlement agreements. In cases between private parties, payment should be made to counsel for the party awarded costs or, if the party is not represented by counsel, to the party pro se. Payment of costs should not be sent to the court. Costs should be paid promptly.

If the court also imposed monetary sanctions, they are payable to the opposing party unless the court's opinion provides otherwise. Sanctions should be paid in the same way as costs.

Regarding exhibits and visual aids: Your attention is directed Fed. R. App. P. 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them. (The clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

FOR THE COURT

/s/ Peter R. Marksteiner

Peter R. Marksteiner
Clerk of Court

cc: James Richard Ferguson
Robert E. Freitas
Daniel J. Weinberg
Joshua Young

17-2330 - Stone Basket Innovations, LLC v. Cook Medical LLC
United States District Court for the Southern District of Indiana, Case No. 1:16-cv-00858-LJM-TAB

# United States Court of Appeals for the Federal Circuit

---

**STONE BASKET INNOVATIONS, LLC,**
*Plaintiff-Appellee*

v.

**COOK MEDICAL LLC,**
*Defendant-Appellant*

---

2017-2330

---

Appeal from the United States District Court for the Southern District of Indiana in No. 1:16-cv-00858-LJM-TAB, Judge Larry J. McKinney.

---

Decided: June 11, 2018

---

ROBERT E. FREITAS, Freitas Angell & Weinberg LLP, Redwood City, CA, argued for plaintiff-appellee. Also represented by DANIEL J. WEINBERG, JOSHUA YOUNG.

JAMES RICHARD FERGUSON, Mayer Brown, LLP, Chicago, IL, argued for defendant-appellant.

---

Before PROST, *Chief Judge*, WALLACH and TARANTO, *Circuit Judges*.

WALLACH, *Circuit Judge.*

Appellee Stone Basket Innovations, LLC ("Stone") sued Appellant Cook Medical LLC ("Cook") in the U.S. District Court for the Southern District of Indiana ("District Court"), alleging infringement of U.S. Patent No. 6,551,327 ("the '327 patent"). Following a dismissal with prejudice, *see Stone Basket Innovations, LLC v. Cook Med. LLC* (*Stone Basket I*), No. 1:16-cv-00858-LJM-TAB (S.D. Ind. Jan. 11, 2017) (J.A. 1157), Cook filed, inter alia, a motion for attorney fees pursuant to 35 U.S.C. § 285 (2012) ("the § 285 Motion"). The District Court issued an order denying the § 285 Motion. *Stone Basket Innovations, LLC v. Cook Med. LLC* (*Stone Basket II*), No. 1:16-cv-00858-LJM-TAB, 2017 WL 2655612, at *1 (S.D. Ind. June 20, 2017).

Cook appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2012). We affirm.

## BACKGROUND

In April 2015, Stone filed its patent infringement suit against Cook in the U.S. District Court for the Eastern District of Texas ("Eastern District"), alleging infringement of the '327 patent. J.A. 41–44. The '327 patent relates to a basket-type stone extraction medical device used to remove stones from biological systems. *See* '327 patent, Abstract, col. 1 ll. 9–12. The claimed extraction basket includes a "support filament" such as a wire with a slideable outer sheath, "a handle comprising a sheath movement element," and a "collapsible" wire basket used to collect the stone. *Id.* col. 6 ll. 10, 16, 19; *see id.* col. 6 ll. 8–45 (claim 1); *see also id.* col. 5 ll. 1–17.

In May 2015, Cook filed a motion to transfer venue from the Eastern District to the District Court. J.A. 59–71. In October 2015, Cook served its invalidity contentions. J.A. 1598–625. In January 2016, Cook deposed the '327 patent's inventor, during which he was asked ques-

tions about his contact with Stone's managing members, Daniel Mitry and Timothy Salmon, and the conception and filing of the '327 patent. J.A. 1504–05, 1510, 1526−27. Specifically, the '327 patent's inventor stated, regarding the addition of the "sheath movement element" in claim 1 to overcome an examiner's rejection, "I realize there is nothing novel about it." J.A. 1510.

In March 2016, Cook petitioned the U.S. Patent and Trademark Office's ("USPTO") for inter partes review ("IPR") of all claims of the '327 patent. *See* J.A. 1628−75; *see also Stone Basket II*, 2017 WL 2655612, at \*3. Meanwhile, upon granting Cook's Motion to Transfer Venue, J.A. 832–34, the Eastern District transferred the case to the District Court. Then, in April 2016, the parties filed a joint motion to stay the case pending the Patent Trial and Appeal Board ("PTAB")'s consideration of Cook's petition for an IPR, which the District Court granted. J.A. 841−43.

In September 2016, the PTAB instituted an IPR on all claims of the '327 patent. *Stone Basket II*, 2017 WL 2655612, at \*3. Following the PTAB's institution, one of Stone's managing members offered to license the '327 patent to Cook in exchange for $150,000.00. *Id.*; *see* J.A. 1714 (confirming license offer in affidavit by Cook's attorney). However, negotiations broke down. *See* J.A. 1716–22 (providing an email exchange between counsel). In December 2016, Stone filed a motion requesting adverse judgment in the IPR proceeding, J.A. 1724–26, and the PTAB granted the adverse judgment motion and cancelled all of the '327 patent's claims, J.A. 1729–30.

That same month, Stone moved to dismiss the District Court litigation with prejudice, *see* J.A. 885, which the District Court granted, *see Stone Basket II*, 2017 WL 2655612, at \*3. In March 2017, Cook filed its § 285 Motion, J.A. 1233−61; however, the District Court denied the

§ 285 Motion, because it determined the case was not "exceptional," *Stone Basket II*, 2017 WL 2655612, at *1.

## DISCUSSION

### I. Standard of Review and Legal Standard

By statute, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). The Supreme Court explained that "[t]here is no precise rule or formula for making" that determination. *Id.* (alteration in original) (internal quotation marks and citation omitted). Instead, "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*

On appeal, we "review all aspects of a district court's § 285 determination for abuse of discretion." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1747 (2014). "We apply Federal Circuit case[]law to the § 285 analysis, as it is unique to patent law." *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1366 (Fed. Cir. 2007) (citation omitted). A district court abuses its discretion when it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Rothschild Connected Devices Innovations, LLC v. Guardian Prot. Servs., Inc.*, 858 F.3d 1383, 1387 (Fed. Cir. 2017) (quoting *Highmark*, 134 S. Ct. at 1748 n.2). "A factual finding is clearly erroneous if, despite some supporting evidence, we are left with the definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks and citation omitted).

Case 1:16-cv-00858-LY-AWA Case: 17-2330 Document: 135-1 Filed 06/15/18 Page: 5 Filed: 06/15/2018 Page 6 of 19 PageID #: 2824

STONE BASKET INNOVATIONS, LLC v. COOK MED. LLC   5

## II. The District Court Did Not Abuse Its Discretion in Denying Cook's § 285 Motion

This appeal involves two main issues, namely, whether the District Court erred in its assessment of: (1) the substantive strength of Stone's litigating position, and (2) the alleged pattern of vexatious litigation by Stone. We address these issues in turn.

### A. The Substantive Strength of Stone's Litigating Position

Under *Octane,* a district court may consider "the substantive strength of a party's litigating position" when determining if the case "stands out from others." 134 S. Ct. at 1756. The District Court analyzed the record—including the '327 patent's prosecution history and prior art, the inventor's deposition testimony concerning the sheath's "novelty," and Stone's decision to cancel its patent—yet ultimately found these factors did not demonstrate that Stone had "willfully ignored the prior art or failed to evaluate its case," or that Stone's "actions were . . . objectively unreasonable in light of the circumstances." *Stone Basket II*, 2017 WL 2655612, at *5 (internal quotation marks omitted). Cook argues that the District Court "disregarded both the law and the facts showing the weakness of [Stone's] patent claims." Appellant's Br. 24 (capitalization modified). We disagree with Cook.

The District Court did not abuse its discretion in finding that the substantive strength of Stone's ultimately non-prevailing litigating position did not warrant an award of fees. Cook submitted two primary pieces of evidence to support its arguments for exceptionality—Cook's invalidity contentions served in the Eastern District and the '327 patent's inventor testimony. The District Court did not abuse its discretion in finding that neither piece of evidence, taken alone or together, warranted a finding of exceptionality.

Case 1:16-cv-00858-LJM-TAB   Case: 17-2330   Document: 35-1   Document 135-1   Page: 6   Filed: 06/11/2018   Filed 06/11/18   Page 7 of 19 PageID #: 2825

6  STONE BASKET INNOVATIONS, LLC v. COOK MED. LLC

First, the District Court did not err in finding Stone lacked any type of "clear notice" of the '327 patent's invalidity by service of Cook's invalidity contentions. *Id.* at 25; *see Stone Basket II*, 2017 WL 2655612, at *4. Although Cook focuses on the obviousness of the '327 patent over U.S. Patent No. 6,168,603 ("Leslie") on appeal, that reference was not the focus of Cook's invalidity contentions, which listed Leslie along with thirty-one other pieces of prior art as anticipatory references. J.A. 1601–02; *see also* J.A. 1602 (singling out only other prior art references Gilson and Greenhalgh—not Leslie—from that list of thirty-two). After providing that list of thirty-two references, Cook made the general statement that "[e]ach prior art reference disclosed above [in the list of thirty-two], either alone or in combination . . . , renders the asserted claims invalid as obvious," J.A. 1602, included a legal standard section for motivation to combine, J.A. 1603–05, and attached inconsistent and unilluminating claim charts, *see, e.g.*, J.A. 1614–25 (attaching claim charts lacking inclusion of Leslie), J.A. 1601, 1614, 1619 (referencing U.S. Patent No. 6,383,196 ("the '196 patent"), which is another patent issued to Leslie, in the claim chart for only two of claim 1's seven claim limitations despite the fact that Cook includes the '196 patent in its list of anticipatory references). The Eastern District's Local Patent Rules governing invalidity contentions require that "each such combination, and the motivation to combine such items, must be identified," and "[a] chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found." E.D. Tex. P.R. 3-3(b), (c).[1] While compliance with local patent rules is not always necessary to provide "clear notice" of

---

[1] In a letter between counsel, Stone asserted its position that Cook's invalidity contentions were not in compliance with the Eastern District's local patent rules. J.A. 1942–43.

invalidity, Cook's invalidity contentions, at minimum, fall short of notifying Stone how Leslie renders the '327 patent obvious—or even that Stone should conduct a focused investigation on whether Leslie, in particular, renders the '327 patent obvious.

Moreover, Leslie is listed on the face of the '327 patent, *see* '327 patent, References Cited, and when prior art "is listed on the face" of a patent, "the examiner is presumed to have considered it," *Shire LLC v. Amneal Pharm., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015). We have explained that, where a party only relies on prior art considered by an examiner in its invalidity contentions, that party has the burden to "overcome[e] the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and . . . whose duty it is to issue only valid patents." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (internal quotation marks and citation omitted). Having been issued a valid patent, Stone was entitled to a presumption of good faith in asserting its patent rights against Cook in the form of a suit for infringement. *See Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d 1371, 1376 (Fed. Cir. 2017) (stating there is a "presumption that an assertion of infringement of a duly granted patent is made in good faith" (internal quotation marks and citation omitted)). Cook's invalidity contentions, based on prior art already considered by the Examiner and with no further explanation, do not make the substantive strength of Stone's position exceptional.

Second, while one might view Stone's litigating position as weak given the inventor's deposition testimony regarding the novelty and origin of claim 1's sheath handle element, *see* J.A. 1504–05, 1510, 1526−27, a strong or even correct litigating position is not the standard by which we assess exceptionality, *see SFA Sys., LLC v.*

*Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015). "A party's position on issues of law ultimately need not be correct for them to not 'stand[] out,' or be found reasonable." *Id.* (quoting *Octane*, 134 S. Ct. at 1756). We decline Cook's invitation to take out of context the inventor's testimony, including that the '327 patent's hired illustrator used the Cook basket handle as inspiration for a portion of the '327 patent's Figure 1. *See* J.A. 1504–05, 1510 (stating by inventor that the '327 patent's representations were "based on" "the Cook handle").

Moreover, contrary to Cook's argument, an inventor's testimony that "there is nothing novel about [the sheath movement]," J.A. 1510, taken alone, neither "establishe[s] the invalidity of the patent on obviousness grounds" nor constitutes a "material false statement[] to the [US]PTO," Appellant's Br. 27, 28. A post-issuance statement regarding a single element of a claimed invention does not establish invalidity because "[w]e must consider the subject matter sought to be patented taken as a whole." *Graham v. John Deere Co.*, 383 U.S. 1, 32 (1966). During prosecution, the USPTO found that the inventor's amendment adding the "handle portion comprising a sheath movement element, . . . as proposed, would overcome the rejection." J.A. 1446. Indeed, duly issued patents are presumed valid. *See* 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011). It was not necessarily unreasonable for Stone to continue to rely on the '327 patent's presumption of validity despite the '327 patent's inventor testimony. *See Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1303 (Fed. Cir. 2004) (concluding, in an appeal from a denial of a fee award, that a party's decision to proceed with a lawsuit was not frivolous "in light of the statutory presumption of validity"). As the trier of fact, the District Court had discretion to weigh and find credible the evidence before it. *See Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 856 (1982) ("Determining the weight and credibility of the

evidence is the special province of the trier of fact."). We will not disturb its findings on appeal.

In response to Cook's contention that Stone's litigating position was "not tenable," the District Court explained that:

> perhaps most telling, was the fact that following Cook's service on [Stone] of its invalidity contentions, it took *no actions* to ensure a rapid termination of the instant litigation . . . [including that it, inter alia,] did not: (1) inform [Stone] that it believed the lawsuit to be frivolous or unfounded; [or] (2) demand that [Stone] drop the lawsuit or indicate that the asserted claims were 'clearly invalid.'

*Stone Basket II*, 2017 WL 2655612, at *4 (emphasis added). On appeal, Cook faults the District Court for citing "no authority for the proposition that tactical decisions made by the prevailing party are relevant to an assessment of the strength of the non-prevailing party's litigating positions." Appellant's Br. 29. We disagree with Cook.

The District Court was well within its discretion to factor in Cook's litigation conduct, because "the conduct of the parties is a relevant factor under *Octane*'s totality-of-the-circumstances inquiry, including the conduct of the movant." *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (footnote omitted) (considering conduct of the movant in assessing exceptionality). Such conduct includes Cook's failure to send any communication to Stone that highlighted and set out with precision the specific invalidity argument on which Cook now relies for its assertion that Stone should have known its conduct was "clearly unreasonable," Appellant's Br. 17, or "objectively baseless," *id.* at 25, so as to merit an award of attorney fees.

Further, Cook's failure to provide early, focused, and supported notice of its belief that it was being subjected to exceptional litigation behavior further supports the District Court's determination that Stone's litigating position did not "stand[] out" from others. *Octane*, 134 S. Ct. at 1756. Absent any evidence that Stone's litigating position was frivolous when filed or at any point before it filed for dismissal, we are not persuaded the District Court abused its discretion in determining Stone's case did not meet the standard for an award of attorney fees. *Cf. Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 676 F. App'x 967, 973 (Fed. Cir. 2017) (affirming award of attorney fees where a party was "on notice" of its potentially frivolous litigating position based on information provided by the opposing party, yet took no action to remedy its position).

Here, litigation commenced in April 2015, J.A. 29, and Cook served its invalidity contentions in October 2015, *Stone Basket II*, 2017 WL 2655612, at *2. The '327 patent inventor's testimony regarding the novelty of the sheath was taken in January 2016. J.A. 1839. The USPTO instituted the IPR in September 2016, J.A. 1690−91, at which time the litigation was stayed pending the IPR's outcome, *see Stone Basket II*, 2017 WL 2655612, at *3. At each of these points during the litigation, we find nothing of record supporting Cook's claim that Stone was "on clear notice" of the '327 patent's invalidity, yet "persisted in pressing . . . meritless claims." Appellant's Br. 25; *see id.* (relying only upon evidence of service of invalidity contentions and the inventor admissions as proof that Stone knew at those points its claims were meritless).

Moreover, a "party cannot simply hide under a rock, quietly documenting all the ways it's been wronged, so that it can march out its 'parade of horribles' after all is said and done." *Aten Int'l Co. v. Uniclass Tech.*, No. CV 15-04424-AG (AJWx), slip op. at 5 (C.D. Cal. Mar. 30, 2018). We find this reasoning both persuasive and appli-

cable to this case. Cook waited until October 2016, nearly a year after service of its invalidity contentions, and nine months after the inventor's statements regarding the sheath's novelty, before informing Stone that, if Stone refused to drop its case, "Cook intend[ed] to file . . . a motion for attorneys' fees against [Stone], its principals and its attorneys." J.A. 1717. During oral argument, counsel for Cook could not explain why it did not make its assertion of frivolousness of the claims known to Stone sooner. *See* Oral Arg. at 11:37–12:19, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2017-2330.mp3 (Q: "That [October 2016] email is . . . the *kind of communication* I am talking about, that is, it says . . . that if you don't accept our settlement, then [we will file for attorney fees]." A: "I recognize that . . . ." Q: "It's just that [the September 2016 letter] came very late, . . . and the proceedings ended . . . six weeks later." A: "Yes . . . ." Q: "Why didn't you send something like that [September 2016 settlement email] before?" A: "I didn't think it would produce the result we were likely to see . . . ." (emphasis added)).

Cook argues that the Motion to Transfer Venue meant any possible notification to Stone while the case was before the Eastern District would not have resulted in the preferred result of dismissal. *See id.* at 5:51–6:05 (stating, by Cook's counsel, that he felt "neither the [Federal] Rule 11 [of Civil Procedure] nor the early summary judgment [motion] was going to give us an early exit" because of the "pending motion to transfer"). It does not matter that a procedural motion was pending in the Eastern District; nothing prevented counsel for Cook from notifying Stone's counsel that Cook regarded Stone's litigating actions as frivolous and explaining precisely why. Cook's counsel acknowledged as much. *See id.* at 11:30–33 (stating, by counsel for Cook, "maybe we could have written a letter"). Nor did anything prevent Cook from

asking the Eastern District to expedite its ruling on the Motion to Transfer Venue. *See* Fed. R. Civ. P. 16(a).

We are further unpersuaded by Cook's counterargument that this case is similar to *Rothschild*, *see* Appellant's Br. 27 (citing 858 F.3d at 1388), in which we reversed a district court's denial of a § 285 motion because the district court failed to consider plaintiff's "willful ignorance of the prior art" given counsel for plaintiff admitted that counsel had "not conducted an analysis of any of the prior art asserted in [the cross-motion] to form a belief as to whether that prior art would invalidate" the patent. *Rothschild*, 858 F.3d at 1388. In *Rothschild*, the defendant also provided notice that the patent was invalid under 35 U.S.C. §§ 101 and 102, *and* filed a motion for judgment on the pleadings. *See id.* at 1385–86. The defendant further served plaintiff with a Rule 11 letter and appended both a draft Rule 11(b) motion and copies of anticipatory prior art. *Id.* at 1386. Here, by contrast, Cook failed to file any Rule 11 motion or motions for summary judgment, and has not set forth any concrete evidence that the District Court failed to consider Stone's evaluation of its case in light of the evidence of record.

Our holding with respect to this factor does not disturb the rule that "a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013); *see Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) (providing "[t]he salient inquiry is whether [plaintiff's] claims were so lacking in merit that [the plaintiff] was legally obligated either to abandon its case altogether or to limit itself to challenging the district court's claim construction order on appeal"). Indeed, by December 2016, Stone moved to dismiss this litigation, and after a hearing on the same, the District Court dismissed with prejudice. *See Stone Basket II*, 2017 WL

2655612, at *3. On the particular facts of this case, where there is no indication of willful ignorance or failure to assess the soundness of pending claims by Stone, Cook's post-judgment notice of its assertion that the claims were always baseless cannot mandate an award of fees under a "totality of the circumstances" analysis. *Octane*, 134 S. Ct. at 1756. Accordingly, the District Court did not abuse its discretion in concluding that Stone's litigating position did not "stand[] out from others." *Id.*

### B. Stone's Conduct in Other Litigation

In considering the "totality of the circumstances" in a § 285 motion, a party's similar conduct in other litigation is also relevant. *See id.* at 1757. The District Court found a lack of evidence to support Cook's assertion that Stone sued Cook, like it had done other defendants, "for the sole purpose of forcing settlements without any intention of testing the merits of its claim." *Stone Basket II*, 2017 WL 2655612, at *6 (internal quotation marks and citation omitted). Further, the District Court noted that "[t]he evidence of record reveals that [Stone] participated in each stage of the litigation for nearly two years and tested the merits of its claims." *Id.* Cook alleges the District Court improperly found that Cook made "conclusory allegations" regarding Stone's alleged pattern of "vexatious litigation" solely "to extract a . . . nuisance payment." Appellant's Br. 38. Instead, Cook avers that its evidence of more than 400 cases filed by entities managed by Stone's managing members, Messrs. Mitry and Salmon, demonstrates that Stone is part of a larger plan to force nuisance settlements, constituting exceptional litigation conduct. *Id.* at 38–41 (citing J.A. 1284–340). We disagree with Cook.

A district court "may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane*, 134 S.

Ct. at 1757. The Supreme Court has characterized § 285 as a "safeguard[]" and has "stress[ed]" that "district courts have the authority and responsibility to ensure frivolous cases are dissuaded." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1930−31 (2015) (citation omitted). We have stated that "a pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285." *Newegg*, 793 F.3d at 1350.

Here, despite Cook's table summarizing the extent of other Mitry-Salmon litigation, the District Court did not abuse its discretion.[2] The record lacks evidence that the number of settlements or type of settlement Stone proposed rises to what we have previously considered exceptional. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326–27 (Fed. Cir. 2011) (affirming a finding of exceptionality based on discovery misconduct and Eon-Net's filing of over 100 lawsuits against "diverse defendants," where Eon-Net "followed each filing by a demand

---

   [2] While we affirm the District Court's ultimate exceptionality determination, which considered evidence that Messrs. Mitry and Salmon are in the business of forming shell entities to extract nuisance settlements, *see Stone Basket II*, 2017 WL 2655612, at *6 & n.3, we note that Messrs. Mitry and Salmon appear to be patent attorneys who have been authorized to practice law, *see* J.A. 60; *see also* Oral Arg. at 19:05–11 (confirming the same by Stone's counsel). Alternative means exist for punishing activities by licensed attorneys that might demonstrate unethical conduct. *See* Oral Arg. at 33:01–18 (agreeing, by counsel, that "there are plenty of remedies that are available" if a party has been subject to improper conduct).

Case 1:16-cv-00858-17-2330 Document 135-1 Filed 06/11/18 Page 16 of 19 PageID #: 2834

STONE BASKET INNOVATIONS, LLC v. COOK MED. LLC    15

for a quick settlement at a price far lower than the cost to defend the litigation," which was demonstrated by evidence of pro-forma settlement offers based on a license fee schedule of a defendant's annual sales). Further, we find no evidence of an immediate settlement demand in the instant case. Instead, Stone litigated its position on the merits for nearly two years, presenting claim construction arguments before the District Court and responses to the IPR petition before the PTAB. As the Supreme Court has cautioned, fee awards are not to be used as a "penalty for failure to win a patent infringement suit." *Octane*, 134 S. Ct. at 1753 (internal quotation marks and citation omitted). The District Court analyzed but ultimately found unpersuasive Cook's arguments, and we see no reason to upset the District Court's findings here. Therefore, we affirm the District Court's determination that this case is not exceptional under 35 U.S.C. § 285.[3]

---

[3] Because we uphold the District Court's finding of no exceptionality, we also affirm the District Court's denial of Cook's motion for attorney fees pursuant to 28 U.S.C § 1927. *See Stone Basket II*, 2017 WL 2655612, at *3, *7–8. Cook's only additional argument for why it merits fees under § 1927 is that Stone's attorneys pursued "unnecessary . . . litigation" by filing suit in the Eastern District. Appellant's Br. 41. We held the District Court did not abuse its discretion in denying fees under § 1927 based upon its findings under the § 285 analysis as well as the fact that "Cook's own counsel stated on the record that Cook sells the product in Texas and that there was no question about venue." *Stone Basket II*, 2017 WL 2655612, at *8 (internal quotation marks and citation omitted); *see Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (outlining the Seventh Circuit's test for attorney fees under § 1927 and reviewing for abuse of discretion); *Nystrom v. TREX Co., Inc.*, 424

CONCLUSION

We have considered Cook's remaining arguments and find them unpersuasive. Accordingly, the Order of the U.S. District Court for the Southern District of Indiana is

**AFFIRMED**

---

F.3d 1136, 1141 (Fed. Cir. 2005) (reviewing a § 1927 challenge under regional circuit law). We also affirm (1) the District Court's denial of Cook's motion to join Messrs. Mitry and Salmon, as that motion depends upon their personal liability for Cook's fees under § 285, and (2) the District Court's denial of Cook's renewed motion for leave to conduct targeted discovery related to the § 285 Motion.

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
717 MADISON PLACE, N.W.
WASHINGTON, D.C. 20439

PETER R. MARKSTEINER                                                              202-275-8000
   CLERK OF COURT

## Information Sheet

### Petitions for Rehearing and Petitions for Hearing and Rehearing En Banc

1. **When is a petition for rehearing appropriate?**

   The Federal Circuit grants few petitions for rehearing each year. These petitions for rehearing are rarely successful because they typically fail to articulate sufficient grounds upon which to grant them. Of note, petitions for rehearing should not be used to reargue issues previously presented that were not accepted by the merits panel during initial consideration of the appeal. This is especially so when the court has entered a judgment of affirmance without opinion under Fed. Cir. R. 36. Such dispositions are entered if the court determines the judgment of the trial court is based on findings that are not clearly erroneous, the evidence supporting the jury verdict is sufficient, the record supports the trial court's ruling, the decision of the administrative agency warrants affirmance under the appropriate standard of review, or the judgment or decision is without an error of law.

2. **When is a petition for hearing/rehearing en banc appropriate?**

   En banc consideration is rare. Each three-judge merits panel is charged with deciding individual appeals under existing Federal Circuit law as established in precedential opinions. Because each merits panel may enter precedential opinions, a party seeking en banc consideration must typically show that either the merits panel has (1) failed to follow existing decisions of the U.S. Supreme Court or Federal Circuit precedent or (2) followed Federal Circuit precedent that the petitioning party now seeks to have overruled by the court en banc. Federal Circuit Internal Operating Procedure #13 identifies several reasons when the Federal Circuit may opt to hear a matter en banc.

3. **Is it necessary to file either of these petitions before filing a petition for a writ certiorari in the U.S. Supreme Court?**

   No. A petition for a writ of certiorari may be filed once the court has issued a final judgment in a case.

   > **For additional information and filing requirements, please refer to Fed. Cir. R. 40 (Petitions for Rehearing) and Fed. Cir. R. 35 (Petitions for Hearing or Rehearing En Banc).**

*Revised May 10, 2018*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
717 MADISON PLACE, N.W.
WASHINGTON, D.C. 20439

PETER R. MARKSTEINER  202-275-8000
CLERK OF COURT

## Information Sheet

## Filing a Petition for a Writ of Certiorari

There is no automatic right of appeal to the Supreme Court of the United States from judgments of the Federal Circuit. Instead, a party must file a petition for a writ of certiorari which the Supreme Court will grant only when there are compelling reasons. *See* Supreme Court Rule 10.

**Time.** The petition must be filed in the Supreme Court of the United States within 90 days of the entry of judgment in this Court or within 90 days of the denial of a timely petition for rehearing. The judgment is entered on the day the Federal Circuit issues a final decision in your case. The time does not run from the issuance of the mandate. *See* Supreme Court Rule 13.

**Fees.** Either the $300 docketing fee or a motion for leave to proceed in forma pauperis with an affidavit in support thereof must accompany the petition. *See* Supreme Court Rules 38 and 39.

**Authorized Filer.** The petition must be filed by a member of the bar of the Supreme Court of the United States or by the petitioner as a self-represented individual.

**Format of a Petition.** The Supreme Court Rules are very specific about the content and formatting of petitions. *See* Supreme Court Rules 14, 33, 34. Additional information is available at https://www.supremecourt.gov/filingandrules/rules_guidance.aspx.

**Number of Copies.** Forty copies of a petition must be filed unless the petitioner is proceeding in forma pauperis, in which case an original and ten copies of both the petition for writ of certiorari and the motion for leave to proceed in forma pauperis must be filed. *See* Supreme Court Rule 12.

**Filing.** Petitions are filed in paper at *Clerk, Supreme Court of the United States, 1 First Street, NE, Washington, DC 20543*.

Effective November 13, 2017, electronic filing is also required for filings submitted by parties represented by counsel. *See* Supreme Court Rule 29.7. **Additional information about electronic filing at the Supreme Court is available at** https://www.supremecourt.gov/filingandrules/electronicfiling.aspx.

No documents are filed at the Federal Circuit and the Federal Circuit provides no information to the Supreme Court unless the Supreme Court asks for the information.

*Revised May 10, 2018*